PEOPLE ex rel. HUSTED *v.* BOARD OF TRUSTEES.   599

App. Div.]          SECOND DEPARTMENT, APRIL, 1904.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. HARVEY HUSTED and Others, Composing a Majority of the Board of Water Commissioners of the Village of White Plains, Respondents, *v.* THE BOARD OF TRUSTEES OF THE VILLAGE OF WHITE PLAINS, Appellant. (Proceedings Nos. 1, 2, 3.)

*White Plains Water Act — the control of the water system is given to the water commissioners — not to the village trustees — the duty of the latter is confined to providing money for its maintenance — authority of the court over public officers.*

Under the White Plains Water Act (Laws of 1896, chap. 769) the control and management of the water system is not within the control of the village board of trustees; the sole duty of the latter body is to provide the necessary funds.

Where the board of water commissioners certify to the board of trustees that certain sums of money are necessary for the extension or maintenance of the water system, it is the duty of the board of trustees to provide such sum.

The board of trustees has no power to require the board of water commissioners to state how they have expended the money which came into their possession, or to determine the necessity of purchasing property which the board of water commissioners contemplate purchasing.

In the absence of a direct and sustained charge of illegality, or a direct and sustained charge of fraud, the court has no authority to interfere with public officers in the discharge of their duties.

APPEALS by The Board of Trustees of the Village of White Plains from three orders of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 13th day of October, 1903, in three separate proceedings, granting a peremptory writ of mandamus in each proceeding.

In proceeding No. 1 the writ directs the board of trustees to issue bonds of the said village in the sum of $12,742.23, for the purpose of purchasing and putting up machinery, piping, laying pipes and hydrants, or for the purpose of constructing, maintaining and operating said water works, and from time to time extending and adding to said works.

In proceeding No. 2 the writ directs the said board of trustees to issue bonds of the village for the sum of $3,500, and the proceeds to be used by the relators for the purpose of purchasing two new boilers.

In proceeding No. 3 the writ directs the said board of trustees to issue a certificate of indebtedness in the sum of $2,381.82, for the purpose of meeting the deficiency in the payment of interest on bonds issued, and to meet other necessary expenses incurred by said board of water commissioners in the maintenance of the water system in the village of White Plains.

By chapter 769 of the Laws of 1896 the village of White Plains was empowered to procure by sale or condemnation the water plant of a private corporation which formerly supplied the said village with water, and provision was also made in said law for the maintenance of the said plant.

*Henry C. Henderson,* for the appellant.

*John M. Digney,* for the respondents.

Order affirmed, with ten dollars costs and disbursements, on the opinion of Mr. Justice KEOGH at Special Term.

All concurred.

The following is the opinion of Mr. Justice KEOGH delivered at Special Term :

KEOGH, J. :

The language of the statute (which is spoken of by counsel as the White Plains Water Act) shows very plainly that the Legislature intended to keep the maintenance and management of the water system of White Plains outside the control of the village trustees. This desire is most aptly and securely accomplished in every section of the act which deals with the practical control of the water plant and the expenditures of money for its preservation. Sections 3, 4, 5, 6, 9,* 14 and 15 pointedly indicate this intention. Nothing is left to be done by the trustees except to provide the funds, and this is left to them only to prevent confusion in the fiscal system of the municipality and to concentrate in one department a complete record of the public indebtedness.

On the 16th of March, 1903, the water commissioners in pursuance of the statute † certified that the sum of $12,742 was needed

---

* Amended by chap. 495 of the Laws of 1900.— [REP.

† See § 4.— [REP.

to buy machines, lay pipes, erect hydrants and for the purpose of extending the water works. On March 25, 1903, the commissioners certified to the board that the sum of $3,500 was necessary to buy two boilers. The trustees neglected to provide this money, and the reason given is contained in the affidavit of Mr. Travis, which is the only paper submitted in opposition.

I am not able to find in the statute any provision requiring the commissioners to present to the trustees any statement, other than that which they have already presented, showing how they have expended the moneys that came into their possession, nor is there anything in the law authorizing the trustees to decide upon the necessity for the purchase of boilers. Indeed, the statute seems to seduously take from the trustees the decision of such questions.

In the absence of a direct and sustained charge of illegality, or a direct and sustained charge of fraud, the court has no authority to interfere with public officers in the discharge of their duties.

The application is granted.